NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-207

CHAD CROWTHER

<u>vs</u>.

JOEL ASADOORIAN & another.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff was a patron at Finn's Pub (the pub) in Lowell on March 18, 2015, when he sustained injuries in an altercation with a "patron or . . . employee" of the pub.  Three years later, he initiated this lawsuit against, among others, defendants Joel Asadoorian and Mill City Suds (collectively, defendants), who had acquired and managed the pub ten months after the incident, asserting various theories of liability.  A Superior Court judge granted the defendants' summary judgment motion and judgment entered on December 20, 2022.  On appeal,

_____

[1] Mill City Suds, Inc.  Defendants Hayhurst Group, Inc., Finn's Pub, Kevin V. Hayhurst, Eric Finn, LD Holdings LLC, and Lauren DiSalvo did not participate in this appeal.

the plaintiff makes four arguments:  (1) the defendants are directly liable for negligence, (2) Asadoorian is liable because he had formed a partnership with the previous owners, (3) the defendants are subject to successor liability, and (4) the defendants should be sanctioned for failure to preserve evidence.  We affirm.

Background.  We briefly summarize the facts from the summary judgment record in the light most favorable to the plaintiff, reserving certain facts for later discussion.  See Milliken & Co. v. Duro Textiles, LLC, 451 Mass. 547, 550 n.6 (2008).  The Hayhurst Group owned and operated the pub, a bar in Lowell, Massachusetts.  At some point in 2014, Asadoorian sought to purchase the pub and approached Kevin Hayhurst (Hayhurst), the Hayhurst Group's principal.  On November 23, 2014, Asadoorian and Hayhurst entered into a management agreement whereby Asadoorian agreed to "take over management of finns pub [sic] with full authority to operate the businesses [sic] normal day to day operations. . . .  This agreement will end upon completion of the sale of the business to mill city suds [sic] Inc."

While managing the pub, Asadoorian and Hayhurst experienced disagreements about the "allocation of funds" of the pub.  As a result, on March 8, 2015, Asadoorian stepped away from his

2

management position, and signed a "Release of Management" agreement.

Negotiations for the purchase of the pub resumed in late July 2015.  On September 29, 2015, Hayhurst executed a bill of sale of the property and the liquor license associated with the property to Mill City Suds, a company owned by Asadoorian.  Mill City Suds was not approved for a license transfer by the Massachusetts Alcoholic Beverages Control Commission until December 8, 2015.  After several months of the company not returning a profit, Asadoorian sold the pub to Lauren DiSalvo and LD Holdings on October 4, 2016, and executed an "Asset Purchase and Sale Agreement."

On March 18, 2015, before the defendants had executed their bill of sale with Hayhurst and ten days after Asadoorian signed the Release of Management agreement, the plaintiff sustained injuries while attempting to assist another patron during an altercation at the pub.  The plaintiff asserts that the person who carried out the assault was "another patron or a Finn's [Pub] employee."  The plaintiff brought suit against the Hayhurst Group, Kevin Hayhurst, and Eric Finn, the pub's manager.  He also asserted claims against Mill City Suds, Asadoorian, LD Holdings, and Lauren DiSalvo.  In December 2019, the plaintiff voluntarily dismissed his claims against LD Holdings and DiSalvo.  On November 16, 2020, a Superior Court

3

judge allowed Mill City Suds' and Asadoorian's motion for summary judgment. In December 2022, the plaintiff entered into a settlement with the Hayhurst Group, Kevin Hayhurst, and Finn. This appeal followed.

Discussion. We apply the familiar standards of summary judgment review:

> "[A] party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates, by reference to material described in Mass. R. Civ. P. 56 (c), [as amended, 436 Mass. 1404 (2002),] unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party's case. To be successful, a moving party need not submit affirmative evidence to negate one or more elements of the other party's claim."

Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).

The plaintiff makes three arguments regarding the defendant's liability: (1) that the defendants are directly liable in tort, (2) that the defendants formed a partnership or joint venture with the pub's former owners/operators and therefore are liable, and (3) that the defendants are liable as successors to the pub's former owners/operators. Additionally, the plaintiff asserts that the defendants should be sanctioned for not preserving certain evidence.

Direct liability. The plaintiff first asserts that the defendants are directly liable for his injuries because

4

Asadoorian negligently failed to improve the pub's security, failed to adequately capitalize Mill City Suds, and destroyed or failed to preserve the pub's business records and security camera footage. "To prevail on a negligence claim, a plaintiff must prove that the defendant owed the plaintiff a duty of reasonable care, that the defendant [committed a breach of] this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage." Kennedy v. Abramson, 100 Mass. App. Ct. 775, 777 (2022), quoting Halbach v. Normandy Real Estate Partners, 90 Mass. App. Ct. 669, 671 (2016). "If a defendant does not owe a legal duty to a plaintiff, then there can be no actionable negligence." Lev v. Beverly Enters.-Mass., Inc., 457 Mass. 234, 240 (2010), citing Remy v. MacDonald, 440 Mass. 675, 677 (2004).

Here, Mill City Suds did not own the pub at the time of the incident, and thus owed no direct duty to the plaintiff. Furthermore, while it is true that Asadoorian was a manager at the pub, he left this position ten days before the incident took place. Additionally, while Asadoorian claimed that one of the reasons that he left his management position was due to the fact that he believed additional security should have been hired and this request was refused, the security guard that allegedly may have been involved in the incident was hired before Asadoorian

became a manager.  Furthermore, Asadoorian did not have the power to fire anyone under the management agreement.

Partnership or joint venture.  The plaintiff next argues that Asadoorian should be held liable because he and Hayhurst had formed a partnership or joint venture at the time of the incident.  We disagree.

> "'To determine whether or not a partnership exists, the
> Legislature has enacted a set of rules that may be applied
> to the circumstances.  G. L. c. 108A, § 7.  In addition,
> other factors may be considered on the issue of the
> existence or nonexistence of a partnership.  See Shain Inv.
> Co. v. Cohen, 15 Mass. App. Ct. 4, 9 (1982).  Those factors
> include, among others, (1) an agreement by the parties
> manifesting their intention to associate in a partnership
> (2) a sharing by the parties of profits and losses, and
> (3) participation by the parties in the control or
> management of the enterprise.'  Fenton v. Bryan, 33 Mass.
> App. Ct. 688, 690-691 (1992)."

Sullivan v. Lawlis, 93 Mass. App. Ct. 409, 413 (2018).

Here, there is no language in the management agreement that shows that the parties intended to form a partnership, and in fact that instrument explicitly provides that, "The manager will not be an employee but instead be considered a sub contractor [sic] in fact."  See Shain Inv. Co., 15 Mass. App. Ct. at 7.  Moreover, while the parties did share profits, they did not share the losses.  See Sullivan, 93 Mass. App. Ct. at 413.  As such, the plaintiff's claim is without merit.

Successor liability.  The plaintiff next argues that the defendants assumed Hayhurst's and Hayhurst Group's liabilities

6

as their successors.  We are not persuaded.  "As a general rule of corporate law, the liabilities of a corporation are not imposed upon its successor."  Smith v. Kelley, 484 Mass. 111, 120 (2020).  See Milliken, 451 Mass. at 556.  However, there are four exceptions to this rule:

> "(1) the successor expressly or impliedly assumes liability of the predecessor, (2) the transaction is a de facto merger or consolidation, (3) the successor is a mere continuation of the predecessor, or (4) the transaction is a fraudulent effort to avoid liabilities of the predecessor."

Cargill, Inc. v. Beaver Coal & Oil Co., 424 Mass. 356, 359 (1997), citing Guzman v. MRM/Elgin, 409 Mass. 563, 566 (1991). Here, the plaintiff argues that all four exceptions apply to the defendants' purchase of the pub.  We review this question of law de novo.  See Goddard v. Goucher, 89 Mass. App. Ct. 41, 44 (2016).

a.  Assumption of liability.  The plaintiff argues that the defendants explicitly or impliedly assumed their predecessors' liabilities by (1) purchasing "substantially all of the assets" of the pub, including its goodwill, (2) assuming all of Hayhurst Group's debts and liabilities when they assumed some of the debts owed Hayhurst, and (3) retaining liability insurance in early 2015 before they purchased the pub.  The claim is meritless.

Hayhurst and the defendants signed an indemnification and release agreement whereby the defendants were released from any claims that could be brought against Hayhurst.[2]  See Atlas Tack Corp. v. Crosby, 41 Mass. App. Ct. 429, 433-434 (1996).  The existence of the release and indemnity clause clearly shows that the parties did not intend for the defendants to assume the liabilities of the pub.[3]  See Leblanc v. Friedman, 438 Mass. 592, 597-598 (2003).

   b.  De facto merger.

"In determining whether to characterize an asset sale as a de facto merger, [courts consider] whether (1) there is a continuation of the enterprise of the seller corporation so that there is continuity of management, personnel, physical location, assets, and general business operations; whether (2) there is a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation; whether (3) the seller corporation

_____

[2] The agreement was signed on the same day as the sale agreement and stated that Hayhurst, signing on behalf of Hayhurst Group, agreed to "release and indemnify" the defendants "from all liability resulting from any guarantee of any corporate loans, debts or contracts, with respect to the business Hayhurst Group, Inc. d/b/a Finn's Pub, and hereby [to] indemnify and hold them harmless from the claims and demands of all persons or entities."

[3] In his brief, the plaintiff argues that since the sale agreement "expressly states that Hayhurst would indemnify Mill City for the Pub's liabilities," this implies that "Mill City and Asadoorian had accepted the Pub's liabilities."  The plaintiff's argument misconstrues the purpose of the release and indemnity agreement, which was to relieve the defendants from liability that the pub incurred before they purchased it.

8

ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible; and whether (4) the purchasing corporation assumes those obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation."

Milliken, 451 Mass. at 557 (quotation omitted).  The focus of the de facto merger analysis is "whether one company has become another for the purpose of eliminating its corporate debt."  Id. at 556.

While it is true that the physical location of the pub stayed the same, and the business generally continued in the same form, the management was indisputably different -- Asadoorian was not the manager of the pub at the time of its sale in December 2015.  See Milliken, 451 Mass. at 556.  Moreover, while the management agreement forbade Asadoorian from firing employees without the consent of Hayhurst, once Mill City Suds purchased the pub, the defendants were not required to retain the previous employees and were free to hire and fire as they saw fit.  Additionally, there is no indication that the defendants purchased the pub to eliminate its debt.  See Smith, 484 Mass. at 121, quoting Milliken, 451 Mass. at 558.

c.  Mere continuation.  "To determine whether the [mere continuation] exception applies, we examine the continuity or discontinuity of the ownership, officers, directors,

9

stockholders, management, personnel, assets, and operations of the two entities."  Smith, 484 Mass. at 120-121.  Like the de facto merger analysis, our focus is on "whether one company has become another for the purpose of eliminating its corporate debt [quotation omitted]."  Id. at 121.

Here, while a substantial amount of the assets was retained at the same location after the sale to Mill City Suds, and the location continued to operate as a bar, Asadoorian was not the manager of the establishment immediately prior to the sale.  See Smith, 484 Mass. at 120-121.  More importantly, the record does not support a conclusion that the defendants purchased the pub in an effort to eliminate its own debt.  See Milliken, 451 Mass. at 557-558.

d.  Fraudulent transaction.  The plaintiff argues that the sale of the pub was fraudulent as it was part of a scheme "to destroy or fail to preserve the Pub's business and security camera records."

Here, even assuming that a videotape existed that captured the incident, the video camera was not included in the equipment list provided to the defendants when they purchased the pub.  See Keene v. Brigham & Women's Hosp., Inc., 439 Mass. 223, 234 (2003).  The defendants also did not know about the assault until three years after the incident when served with the lawsuit, and thus would not have known about the "threat of a

lawsuit."  Scott v. Garfield, 454 Mass. 790, 798 (2009), quoting Kippenhan v. Chaulk Servs., Inc., 428 Mass. 124, 127 (1998). There is no indication from the record that the sale was a fraudulent effort to avoid liability.

Sanctions.  Finally, the plaintiff argues that the defendants should be sanctioned for failure to maintain copies of the videotape that they believe existed at the time of the assault.  We review the judge's sanctions order for abuse of discretion or other error of law.  See Wiedmann v. The Bradford Group, Inc., 444 Mass. 698, 705-706 (2005).  "[T]he doctrine of spoliation . . . permits the imposition of sanctions and remedies for the destruction of evidence in civil litigation. The doctrine is based on the premise that a party who has negligently or intentionally lost or destroyed evidence known to be relevant for an upcoming legal proceeding should be held accountable for any unfair prejudice that results."  Keene, 439

11

Mass. at 234, citing <u>Fletcher</u> v. <u>Dorchester Mut. Ins. Co</u>., 437 Mass. 544, 549-550 (2002).

As mentioned above, the defendants did not know about the existence of the videotape, and thus the Superior Court judge correctly rejected the imposition of sanctions.

<u>Judgment affirmed</u>.

By the Court (Meade, Blake & Desmond, JJ.[4]),

Clerk

Entered:  October 8, 2024.

---

[4] The panelists are listed in order of seniority.